704 S.W.2d 403 (1985)
John T. GORDIN, Appellant,
v.
Harold R. SHULER, Trustee and/or Assigns, Appellees.
No. 05-85-00309-CV.
Court of Appeals of Texas, Dallas.
November 27, 1985.
Rehearing Denied January 20, 1986.
*404 Joe Bailey Hyden, Dallas, for appellant.
Thomas K. Boone, Stollenwerck, Moore & Silverberg, Dallas, for appellees.
Before AKIN, ALLEN and DEVANY, JJ.
AKIN, Justice.
John T. Gordin appeals a judgment ordering him to specifically perform a real estate contract that he had entered into with appellee, "Harold R. Shuler, Trustee and/or Assigns." Although the contract of sale provided that appellee was the purchaser, the evidence adduced at trial established that the actual buyers were to be Harold Shuler and Louis Reese, who were also the agents who negotiated the sale for Gordin. *405 They were to purchase the property in the name of Shuler-Reese & Company, a general partnership in which each was a 50% partner, or in the name of Beaulieu Condo, Inc., a corporation wholly owned by them.[1] Accordingly, the various special issues submitted to the jury inquired about the actions of Shuler, Reese, Shuler-Reese & Company, or some combination thereof, as appropriate.
On appeal Gordin contends: (1) that the trial court erred in granting specific performance because certain conditions precedent had not been performed or excused; (2) that the trial court erred in granting specific performance because the written approval to the conveyance of Boston Mutual Life Insurance Company, the first lien holder on the property at issue, was procured by Shuler-Reese & Company's failure to disclose material information; and (3) that the trial court erred in disregarding the jury's answer to Special Issue Thirty-Two, whereby the jury refused to find that Gordin's agent, Shuler-Reese & Company, fully disclosed to Gordin that Shuler-Reese & Company was to be the actual purchaser rather than Harold Shuler, Trustee and/or Assigns.[2]
By cross-points,[3] appellee contends that there was no evidence, or alternatively insufficient evidence, to support the jury's finding that Shuler-Reese & Company's failure to disclose material information to Boston Mutual was made with the intention that it should be acted upon.
We hold that the trial court erred in granting specific performance because there was no evidence that all conditions precedent were performed or excused and because the written approval of Boston Mutual was procured as a result of Shuler-Reese & Company's failure to disclose material information. We also hold that the trial court erred in disregarding the jury's refusal to find that Shuler-Reese & Company fully disclosed the identity of the actual purchaser to Gordin. Further, we hold that the trial court erred in granting specific performance because of Shuler-Reese & Company's failure to so disclose. With respect to appellee's cross-points, we hold that there was sufficient evidence to support the jury's finding that Shuler-Reese & Company's failure to disclose to Boston Mutual was made with the intention that it should be acted upon. Accordingly, we reverse the judgment of the trial court and render judgment for Gordin.
In early 1979 Gordin was approached by Jack Petruccelli, a real estate salesman for Shuler-Reese & Company, who inquired whether Gordin was interested in selling his 24-unit apartment complex known as the Versailles Apartments. After negotiation, a contract of sale was signed on April 28, 1979. Shuler-Reese & Company was Gordin's agent in negotiating the sale. The purchaser named on the contract was "Harold Shuler, Trustee and/or Assigns." The sale price was $432,000; the down payment was to be $125,280 and a wrap-around note was to be executed for the balance of $306,720. The property was already subject to a first lien in favor of Boston Mutual. A deed of trust and a promissory note bearing interest at the rate of 9¼ with a principal amount of $213,000 from Gordin to Boston Mutual were also already in existence. These were to remain in effect and the contemplated $306,720 note to Gordin was to "wrap around" Gordin's note to Boston Mutual.
The contract of sale provided that the written approval of Boston Mutual to the conveyance and to the subordinate deed of trust contemplated by the wrap-around note was to be "obtained." Although the contract did not specify which party was to obtain Boston Mutual's written approval, the purchaser undertook this responsibility. The parties assumed (correctly, as they later discovered) that Boston Mutual would *406 seize this opportunity to raise the interest rate on Gordin's note.
Boston Mutual's written approval was eventually communicated to Glenn Justice Mortgage Company, Inc., Boston Mutual's local mortgage-servicing agent, in the form of a letter written by John McGovern, mortgage officer for Boston Mutual, that provided:
Pursuant to the request of Mr. Harold R. Shuler and Mr. Louis G. Reese, our Finance Committee approved the transfer of the property from Mr. Gordin to Messrs. Reese and Shuler. The terms and conditions of the approval are as follows:
1. Mr. Gordin would remain personally liable and would agree to all changes.
2. Messrs. Reese and Schuler [sic] will assume the obligation of our mortgage and will also be personally liable for the loan amount. A suggested assumption agreement is being sent to our attorney.
3. The interest rate of the note is to be modified to 10% or such rate which in the opinion of our attorney would not exceed any usury statute in the state of Texas.
4. New UCC-1 financing statements are to be signed by the borrowers and filed.
5. A new insurance policy will be provided us showing our mortgage interest.
6. A copy of the deed of conveyance should be provided us for our file.
7. Our attorney, James Blanchette, will prepare and be satisfied with all documents. His fees and expenses in this matter will be paid by the borrowers.
 Very truly yours,
 John R. McGovern
 Mortgage Officer
Gordin, however, steadfastly refused to close the sale. Appellee then sued seeking specific performance of the contract of sale.

NO EVIDENCE OF GORDIN'S AGREEMENT TO CONDITIONS
Gordin contends on appeal that the trial court erred in granting specific performance because certain conditions precedent had not been performed or excused. A condition precedent is an event that must occur or be performed before a right can accrue to enforce an obligation. Bair v. Voelker Realty Co., Inc., 589 S.W.2d 867, 869 (Tex.Civ.App.Dallas 1979, no writ); Albright v. Texcellere Corp., 561 S.W.2d 533, 538 (Tex.Civ.App.Corpus Christi 1979, writ ref'd n.r.e.). McGovern's letter from Boston Mutual to Glenn Justice Mortgage Company provided that the first "condition of [Boston Mutual's] approval" was that "Mr. Gordin remain personally liable and would agree to all changes" (emphasis added). The jury found that among the conditions precedent to Boston Mutual's written approval were "[t]hat John Gordin agree to an increase in the interest rate of the Boston Mutual note to ten (10%) percent or such rate which would not exceed any Texas usury statute" and "[t]hat Gordin agree to the Note Amendment and Assumption Agreement."
When a defendant's liability on a contract depends on the performance of a condition precedent, the plaintiff must allege and prove that the condition precedent has been performed or that there has been a waiver of such performance. Parkview General Hospital, Inc. v. Eppes, 447 S.W.2d 487, 490 (Tex.Civ.App.Corpus Christi 1969, writ ref'd n.r.e.). Appellee failed to submit an issue inquiring whether the conditions precedent had been performed.[4]
*407 The record contains no evidence that Gordin agreed to an increased interest rate on his Boston Mutual note or to the Note Amendment and Assumption Agreement. Rather, the record clearly reflects Gordin's repeated refusal to agree to these "changes." Accordingly, there was no evidence that the conditions precedent were performed. Consequently, we hold that the trial court erred in granting specific performance.
In this respect, we note that the jury answered "no" to Special Issue Ten, which inquired:
Was John Gordin's refusal, if any, to agree to the changes or conditions imposed by John McGovern's letter an unjustified attempt to prevent the obtaining of Boston Mutual's approval?
Because the record contains no evidence that Gordin agreed to the conditions imposed by the letter, we must assume that the jury believed that Gordin's refusal to agree was not an unjustified attempt to prevent the obtaining of Boston Mutual's approval.
Appellee, however, points to portions of Gordin's testimony wherein Gordin stated that his qualms or reservations regarding performance of the conditions set forth in McGovern's letter were resolved by the offer of Shuler and Reese and Shuler-Reese & Company to hold Gordin harmless from any adverse consequences arising out of performance of the conditions. Appellee argues that Gordin's statements concerning his subjective intentions demonstrate his agreement to the conditions. We do not agree. In determining whether a party assented to the terms of an agreement we must rely on objective standards of what was said and done and not on an alleged subjective state of mind. Slade v. Phelps, 446 S.W.2d 931, 933 (Tex.Civ.App.Tyler 1969, no writ). The fact that one party thought, supposed, or expected something is not sufficient to show an enforceable agreement. See Finley v. Hundley, 252 S.W.2d 958, 962 (Tex.Civ.App.Dallas 1952, no writ). There was no evidence of any objective manifestation of Gordin's agreement to the conditions in question and, therefore, there was no evidence of his agreement thereto.
Appellee further argues that the jury's finding that Shuler and Reese and Shuler-Reese & Company were "ready, willing, and able to satisfy, and hold John Gordin harmless from, the conditions imposed by" McGovern's letter rendered Gordin's agreement to the conditions unnecessary. We reject this reasoning. A condition precedent to Boston Mutual's approval was that Gordin remain personally liable on his note to Boston Mutual. The interest rate on that note was to be raised from 9¼% to 10%. Shuler and Reese offered either to increase the amount of the wrap-around note payments to Gordin by the amount necessary to compensate for the increased interest rate or to place the entire amount of the additional interest in escrow.
However, appellee fails to note an important distinction: Shuler and Reese promising to compensate Gordin for his additional liability is simply not the same as Gordin not incurring that additional liability at all. In the event that, due to his increased liability, Gordin needed to seek indemnity from Shuler and Reese, Gordin would be forced to undertake steps[5] which would not have been necessary had Gordin not assumed the additional liability. Similarly, obtaining funds from an escrow account often entails litigation, as Shuler's testimony indicated. Consequently, we decline to hold that the "hold harmless" assurances of Shuler and Reese and Shuler-Reese & Company to Gordin rendered unnecessary Gordin's agreement to the conditions imposed by McGovern's letter.
Appellee also argues that Gordin's refusal to agree was unreasonable and that his *408 unreasonable refusal excused the condition that he agree to the conditions imposed by McGovern's letter. We disagree, noting the jury's finding that Gordin's refusal to agree was not an unjustified attempt to prevent the obtaining of Boston Mutual's approval.

NON-DISCLOSURE AS TO BOSTON MUTUAL
Gordin contends that the trial court erred in granting specific performance because the written approval of Boston Mutual was procured by Shuler-Reese & Company's failure to disclose material information. The record shows that Boston Mutual's written approval extended only to "transfer of the property from Mr. Gordin to Messrs. Reese and Shuler." However, Shuler and Reese desired, apparently for tax reasons, that Gordin convey title to Beaulieu Condo, Inc., a corporation wholly owned by them. Beaulieu Condo was to borrow the down payment of approximately $125,000 from Inwood National Bank. This loan was to be secured by a third lien on the Versailles Apartments. The jury, by its answers to special issues, found: that Shuler-Reese & Company failed to disclose to Boston Mutual that Beaulieu Condo intended to borrow the $125,000 and create a third lien on the property; that such disclosure was necessary in order not to mislead Boston Mutual about the true nature of the transaction; that the failure to disclose was material; that the failure to disclose was made with the intention that it be acted upon, and that it was acted upon by Boston Mutual; and that Boston Mutual would not have given its written approval had the disclosure been made.
Gordin argues that because Boston Mutual's written approval was obtained as a result of Shuler-Reese & Company's failure to disclose material information, the trial court erred in ordering specific performance. We agree. The remedy of specific performance is equitable in nature and is subject to the principles of equity. Okon v. Levy, 612 S.W.2d 938, 940 (Tex.Civ.App.Dallas 1981, writ ref'd n.r.e.). Specific performance is purely equitable and not based on absolute right. Johnson v. Karam, 466 S.W.2d 806, 810 (Tex.Civ.App.El Paso 1971, writ ref'd n.r.e.). One seeking specific performance must come into court with clean hands and must show, inter alia, that the contract is fair and is free from misrepresentation, misapprehension, fraud, mistake, or surprise. Nash v. Conaster, 410 S.W.2d 512, 519 (Tex.Civ.App.Dallas 1966, no writ); Riggins v. Trickey, 46 Tex.Civ.App. 569, 102 S.W. 918, 921 (1907, writ ref'd). In our case, the jury found that Boston Mutual's written approval would not have been obtained if Shuler-Reese & Company had disclosed that Beaulieu Condo intended to borrow the down payment and create a third lien on the property. Gordin would have been in default under the terms of his note to Boston Mutual had he attempted to sell the apartments without Boston Mutual's written approval. We must conclude, therefore, that appellee has not shown a contract free from misrepresentation or fraud. Moreover, we note that Shuler-Reese & Company was acting as Gordin's agent in the sale of the apartments and so was in a fiduciary relationship with him. Under these circumstances, we hold that appellee is not entitled to the equitable remedy of specific performance.
Appellee argues that specific performance should not be denied because Gordin failed to obtain findings on all elements of actionable fraud. We do not agree with this contention. The level of fraud or misrepresentation necessary to defeat specific performance is somewhat less than that required to obtain cancellation or rescission of a contract. See Inman v. Parr, 311 S.W.2d 658, 709 (Tex.Civ.App.Beaumont 1958, writ ref'd n.r.e.); Riggins, 102 S.W. at 921. The jury's findings, coupled with Shuler-Reese & Company's fiduciary role, clearly show that appellee did not come into court with clean hands and that the transaction was not free from misrepresentation or fraud.
Appellee further argues that specific performance should not be denied because the *409 failure to disclose material information was directed at Boston Mutual, a third party, rather than at Gordin, the party against whom specific performance was sought. Again, we do not agree.
As we have stated, the jury found that Boston Mutual's written approval would not have been obtained had Shuler-Reese & Company fully disclosed to Boston Mutual the information regarding Beaulieu Condo and the third lien. Accordingly, had Gordin agreed to the conditions set forth in McGovern's letter he would have been bound to the contract as a direct result of Shuler-Reese & Company's failure to disclose. Furthermore, we note that, under the sequence of events as contemplated by Shuler and Reese, Gordin was to convey the property to Beaulieu Condo and create the third lien on the property in Dallas. After Gordin and the purchaser signed all necessary papers in Dallas, the papers were to be sent to Boston for Boston Mutual's signature. Boston Mutual, however, had not given written approval for a transfer from Gordin to Beaulieu Condo. Thus, under this scenario, Gordin would have been in default on his note with Boston Mutual at the time he conveyed to Beaulieu Condo. Pursuant to their agreement, Boston Mutual could have then accelerated the balance due on Gordin's note and foreclosed on the property. Where Gordin's interests and obligations were so directly affected by Shuler-Reese & Company's nondisclosure to Boston Mutual, the equitable remedy of specific performance should not have been granted.
Appellee also asserts that specific performance should not be denied because the jury answered "yes" to these special issues:

SPECIAL ISSUE NO. 8
Were Harold Shuler and Louis Reese and Shuler-Reese & Co. ready, willing and able to pay cash, in the amount of $125,000.00, rather than borrow that amount from the Inwood National Bank and create a third lien on the property, at the time Boston Mutual's approval was obtained, if any you have so found?

SPECIAL ISSUE NO. 9
Were Harold Shuler and Louis Reese and Shuler-Reese & Co. ready, willing and able to close with Shuler-Reese & Company, rather than Beaulieu Condo Inc., as the purchaser at the time Boston Mutual's approval was obtained, if any you have so found?
We disagree with appellee's contention. The fact that Shuler and Reese and Shuler-Reese & Company were willing and able to close the deal under different terms had the material terms which were not disclosed to Boston Mutual been revealed and objected to is of no consequence to our decision. The willingness and ability of Shuler and Reese and Shuler-Reese & Company to close under different terms does not alter the fact that Boston Mutual's written approval was obtained as a result of Shuler-Reese & Company's non-disclosure of material information. Appellee's argument is without merit.

NON-DISCLOSURE AS TO GORDIN
Gordin contends that the trial court erred in disregarding, on appellee's motion, the jury's refusal to find that Gordin's agent, Shuler-Reese & Company, fully disclosed to him that the actual purchaser was Shuler-Reese & Company rather than Shuler, Trustee and/or Assigns. Gordin argues that the trial court erred in disregarding the jury's answer because there was evidence to support it and that, consequently, the court erred in ordering specific performance. We agree with these contentions.
Where a motion is one to disregard certain jury findings (as distinguished from a motion to disregard the whole verdict), the test as to whether such answers should be disregarded is whether there is any evidence to support the answers. [Citations omitted.]
If there is any evidence of probative force, from which reasonable minds might come to the conclusion that the *410 jury came to, then there is "some evidence" to support the finding of the jury, and it then becomes the duty of the court to enter judgment in keeping with such finding. The fact that there may be evidence to the contrary is immaterial. [Citations omitted.]
Houston County v. Leo L. Landauer & Associates, Inc., 424 S.W.2d 458, 464 (Tex.Civ.App.Tyler 1968, writ ref'd n.r.e.). The record contains the following testimony of Gordin, which is some evidence to support the jury's answer:
Q. Well, [your pleading] says that nobody told you that Shuler-Reese & Company was the purchaser.
A. Nobody told me that, yes.

* * * * * *
Q. Well, I'm asking you about the purchaser. Is it your testimony that it was not disclosed to you that Shuler-Reese & Company would, in fact, be the purchaser?
A. Specifically, no.
Because there was evidence supporting the jury's answer, the trial court erred in disregarding it.
Appellee, in his brief, argues that Gordin knew as a matter of law that Shuler-Reese & Company was to be the purchaser because the contract of sale contained this provision:
It is understood that Harold B. Shuler may be acting as both agent and principal in this transaction, and seller has no objection to this.
We cannot agree with appellee. The contract merely provided that the agent "may" also be acting as principal; this provision did not relieve the agent, Gordin's fiduciary, from the duty of disclosing that the agent was indeed to be the actual purchaser.
Gordin further contends that because the jury failed to find full disclosure, the trial court erred in granting specific performance. We agree. The rule applicable in our situation has been succinctly stated as follows:
[I]f an agent for the sale of his principal's property should buy it himself, either directly or through the instrumentality of a third person, the purchase is voidable at the option of the principal; the transaction will be set aside, even if the agent proves that the price is fair and reasonable and that there is no element of undue advantage; nothing will defeat the principal's remedy except his own confirmation after full knowledge.
Allison v. Harrison, 137 Tex. 582, 156 S.W.2d 137, 140 (1941) (emphasis in original). The undisclosed self-interest of the agent makes the transaction voidable at the election of the principal, "without looking further into the matter than to ascertain that the interest existed." Nabours v. McCord, 100 Tex. 456, 100 S.W. 1152, 1154-55 (1907). See also Anderson v. Griffiths, 501 S.W.2d 695, 700-01 (Tex.Civ.App.Fort Worth 1973, writ ref'd n.r.e.); Burleson v. Earnest, 153 S.W.2d 869, 874-76 (Tex.Civ.App.Amarillo 1941, writ ref'd w.o.m.); Hume v. Baggett & Baggett, 221 S.W. 1002 (Tex.Civ.App.San Antonio 1920, no writ). Accordingly, we must conclude that the trial court erred in ordering specific performance.

SHULER'S CROSS-POINTS
Appellee contends that there was no evidence, or insufficient evidence, to support the jury's affirmative answer to this special issue:

SPECIAL ISSUE NO. 15
Do you find from a preponderance of the evidence that the failure to disclose [to Boston Mutual that Beaulieu Condo, Inc., planned to borrow $125,000 and create a third lien on the property] with Shuler-Reese & Company was made with the intention that it should be acted upon?
[Emphasis added.]
The question of a party's intent is, because of its very nature, often answered by looking to circumstantial rather than direct evidence. In our case, there is evidence in the record from which the jury could draw *411 inferences as to the intent of Shuler-Reese & Company. For example: both Shuler and Reese testified that a conveyance to Beaulieu Condo would have favorable tax consequences; Shuler and Reese testified that they would prefer to make the $125,000 down payment with borrowed funds rather than their own; and John McGovern, mortgage officer for Boston Mutual, testified that he would not have recommended that Boston Mutual approve the proposed sale if he had known of the intention of Shuler and Reese to create a third lien on the property. Additionally, the jury was able to view the demeanor of the witnesses. In this respect, we note that Reese, when asked why Boston Mutual was not informed of the proposed third lien, answered that he did not remember and did not know why. We hold, therefore, that there was sufficient evidence to support the jury's answer to Special Issue Fifteen.
Reversed and rendered.
NOTES
[1] This information was not known by Gordin.
[2] Gordin raises additional points of error which, in light of our disposition of this appeal, we need not address.
[3] Although appellee denominates these as "counter points," they are actually cross-points.
[4] Gordin did not object to appellee's failure to submit such an issue. We note that the jury, in addition to finding that certain events were conditions precedent to Boston Mutual's written approval, found that Boston Mutual's approval was obtained. In light of these findings and Gordin's failure to object, it is plausible to argue that TEX.R.CIV.P. 279 mandates that we deem as found the performance of the conditions precedent. Rule 279 requires, however, that the record contain evidence to support such a finding. We have concluded that the record does not contain this evidence.
[5] These steps could include legal action, with its attendant costs, to enforce the indemnity agreement. Additionally, Gordin would bear the risk that Shuler, for whatever reason, would be unable to indemnify him if and when the occasion arose.